UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL L. CHAMPION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | Case No.: 1:11-cv-01504 - JLT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 20)<br><br>ORDER REMANDING THE MATTER PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF CHERYL L. CHAMPION AND AGAINST DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY |

Cheryl Champion ("Plaintiff") asserts she is entitled to disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the medical evidence and her subjective complaints. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits.

For the reasons set forth below, Defendant's motion for summary judgment is **DENIED**, and the matter is **REMANDED** for further proceedings.

///

///

## PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on May 1, 2008, alleging disability beginning January 1, 2007. (Doc. 13-6 at 2). The Social Security Administration denied her claim initially on September 26, 2008, and upon reconsideration on July 9, 2009. (Doc. 12-4). After requesting a hearing, Plaintiff testified before an ALJ on June 23, 2010. (Doc. 13-3 at 43).

The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on November 13, 2009. *Id.* at 18-26. Plaintiff requested a review by The Appeals Council denied Plaintiff's request for review on June 14, 2011. *Id.* at 2-7. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

   physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and hearing testimony. 20 C.F.R. §§ 404.1527, 404.1529.

**A.** **Relevant Medical Opinions**

Dr. Khong reviewed Plaintiff's medical records and completed a physical residual functional capacity assessment on August 14, 2008. (Doc. 13-9 at 59-63). Dr. Khong noted Plaintiff was status post- lumbar spine fusion and removal schwannoma, and opined she had the ability to lift and carry ten pounds frequently and twenty pounds occasionally. *Id.* at 59-60. In addition, Dr. Khong determined Plaintiff had the ability to stand, sit, and walk about six hours in an eight-hour workday. *Id.* at 60. According to Dr. Khong, Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.* at 61. Plaintiff did not have any limitations with her ability to push and/or pull, or any manipulative limitations. *Id.* at 60-61.

On September 11, 2008, Dr. Shireen Damania performed a psychiatric evaluation. (Doc. 13-9 at 68-72). Plaintiff reported she could not bend or twist, stand for more than ten minutes, or lift items

more than five pounds. *Id.* at 68. In addition, Plaintiff informed Dr. Damania that her "depression-anxiety" made it difficult to relate to people or leave her house. *Id.* Dr. Damania noted Plaintiff reported a history of depression, which Plaintiff believed was exacerbated by "her inability now to be gainfully employed and her medical problems and the financial difficulties her family now faces, since her husband had to take a medical retirement as a fire fighter." *Id.* at 69. Plaintiff stated she had difficulty sleeping, tended to isolate herself, and she had suicidal thoughts. *Id.* Dr. Damania opined Plaintiff's "[m]emory for recent and past recall was intact," and "[n]o difficulties were noted in memory, concentration, persistence and pace. *Id.* at 71-72. Dr. Damania determined:

> She is able to understand, carryout, and remember three- and four-step job instructions in a work like setting. She is able to respond appropriately to coworkers, supervisors, and the public. From the psychiatric point of view, she is able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision.

*Id.* at 72. According to Dr. Damania, Plaintiff's level of psychological stressors was in the "Mild to Moderate" range, and she had a GAF score of 61.[1] *Id.*

Dr. Biala completed a psychiatric review on September 24, 2008. (Doc. 13-9 at 73). Dr. Biala opined Plaintiff's affective disorder was not a severe impairment. *Id.*

On June 6, 2009, Dr. Greg Hirokawa performed a comprehensive psychiatric evaluation. (Doc. 13-10 at 35-40). Plaintiff "reported feeling depressed, anxious, having poor concentration, and short-term memory problems." *Id.* at 35. Dr. Hirokawa observed Plaintiff's recent and past memory recall "appear[ed] intact," and her concentration was adequate. *Id.* at 38. Based upon the examination, Dr. Hirokawa opined Plaintiff was "mildly limited" in her ability to understand, remember, and carry out simple instructions; maintain attention and concentration for extend periods; perform activities within a schedule; maintain attendance and consistent pace; and "complete a normal workday and workweek without interruptions from psychologically based symptoms." *Id.* at 39.

---

[1] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV* at 34.

Dr. Kammen reviewed the medical records on July 8, 2009, and opined Plaintiff "should be capable of returning to prior work." (Doc. 13-10 at 86). Dr. Kammen noted Plaintiff's leg pain was "easily managed with ibuprofen." *Id.* In addition, Dr. Kammen observed Plaintiff's "[n]euro exam is normal, and she appeared to be "recovering well" after the removal of a schwanomma from her left palm. *Id.* Thus, Dr. Kammen opined there was "no evidence of a closed period of disability." *Id.*

Plaintiff's treating physician, Dr. Steven Miller, provided evaluations of her mental and physical capacities on May 23, 2010. (Doc. 13-12 at 46-47, 49-50). Dr. Miller noted he began treating Plaintiff on February 8, 1999, as her family physician. *Id.* at 46. With regard to Plaintiff's mental abilities, Dr. Miller suspected Plaintiff had "difficulty with her short-term memory, which may be exacerbated by the fairly large number of medications she takes, including a muscle relaxer, an antidepressant, and an opioid." *Id.* According to Dr. Miller, Plaintiff's medication could cause "drowsiness, poor memory, and decreased cognition, especially with the muscle relaxer and opioid." *Id.* Dr. Miller doubted Plaintiff was able to maintain concentration for two-hour increments, and opined Plaintiff was unable to withstand the stress associated with an eight-hour work day. *Id.*

Dr. Miller opined Plaintiff had the ability to sit, stand, and walk for one hour each in an eight-hour day, and explained she must alternate sitting and standing every fifteen minutes to relieve pain. (Doc. 13-21 at 49). He believed Plaintiff had the ability to lift and carry up to five pounds occasionally, but never more. *Id.* Dr. Miller opined Plaintiff was able to bend and kneel occasionally, but never squat, crawl, climb, or stoop. *Id.* Dr. Miller explained he believed "her primary disabling problems are now secondary to her low back pain and problems with her cognition caused by both the pain and the side effects of her medication." *Id.* at 50.

**B.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. (Doc. 13-3 at 20). The ALJ found Plaintiff's severe impairments included "disorder of the back with a history of surgery and a history of schwannoma." *Id.* However, the ALF found Plaintiff's depression was not a severe impairment. *Id.* The ALJ found Plaintiff's severe impairments did not meet or medically equal a listing. *Id.* at 20-21.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b)." (Doc. 13-3 at 22). Specifically, the ALJ found Plaintiff "could lift and carry 20 pounds occasionally and 10 pounds frequently and stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday with stooping, crouching, kneeling, crawling, climbing and balancing occasionally." *Id.* With this RFC, Plaintiff was capable of performing her past relevant work as a medical transcriptionist. *Id.* at 25-26. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 26.

## DISCUSSION AND ANALYSIS

**A.     The ALJ erred in his evaluation of the medical evidence.**

In this circuit, the opinions of three categories of physicians are distinguished: (1) treating physicians, (2) examining physicians, who examine but do not treat the claimant, and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d. 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

A treating physician's opinion is not binding upon the ALJ when the ALJ provides "specific and legitimate" reasons for rejecting the opinion, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Notably, the opinion of a treating physician may be rejected whether or not the opinion is contradicted by another. *Magallanes*, 881 F.2d at 751.

Plaintiff contends the ALJ improperly rejected the opinion of her treating physician. (Doc. 16 at 9-12). Plaintiff observes, "Dr. Miller opined that [she] would have limitations on her ability to function at less than a sedentary level of exertion as a result of her severe impairments." *Id.* at 10. Defendant argues, "The ALJ properly weighed the medical evidence," and "reasonably relied upon the

findings of a State agency reviewing physician, A. Khong, M.D., and a consultative examiner, Dr. Damania."[2]  (Doc. 20 at 6).

Notably, the ALJ explained he relied upon the assessment of Dr. Khong in formulating Plaintiff's RFC.  (Doc. 13-3 at 22).  Thus, the ALJ chose to adopt the opinion of a non-examining physician over Plaintiff's treating physician, and gave "little weight" to the opinion of Dr. Miller.  *Id.* at 25.  The ALJ explained,

> Although Dr. Miller indicated the claimant can only do a very narrow range of sedentary work, his assessment is inconsistent with his own treatment records, as well as the record as a whole.  For example, the claimant took several trips to Mexico and one to Michigan despite alleging debilitating pain.  Limitations involving the claimant's feet and hands are not supported by the objective evidence; for example, her left arm improved significantly after the carpal tunnel release.

*Id.*  Therefore, the ALJ concluded the assessment of Dr. Miller was not entitled to controlling weight.

Significantly, when a treating physician's opinion is unsupported by the objective medical evidence, the ALJ must identify the conflicting evidence to set forth a specific, legitimate reason for discounting the opinion.  *See Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  To disregard a treating physician's opinion as contradicted by the medical evidence, the ALJ has a burden to "*set out a detailed and thorough summary of the facts and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Id.* (emphasis added); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Here, the ALJ offered only his conclusion that the treating record contradicted the opinion of Dr. Miller, and cites broadly to the treatment records, without referencing any findings or clinical evidence therein.

Moreover, although the ALJ references Plaintiff's trips to Mexico as support of his assertion that Dr. Miller's assessment is inconsistent with her conduct, Plaintiff's trips to Mexico were before the onset date provided by Dr. Miller.  Plaintiff testified she went to Mexico in 2006, and a treatment note from Dr. Miller dated February 1, 2007, indicated Plaintiff would be leaving for Mexico in two days.  (Doc. 20 at 9).  However, Dr. Miller opined the onset date for Plaintiff's physical limitations

---

[2] Notably, consultative examination performed by Dr. Damania related to Plaintiff's *mental* impairments, rather than physical.  (*See* Doc. 13-9 at 68-72).  Dr. Damania did not offer an opinion regarding Plaintiff's physical capacities, and the ALJ did not cite the opinion of Dr. Damania as support for the physical RFC assesment.  (Doc. 13-3 at 25).

was November 12, 2007. (Doc. 13-12 at 50). Accordingly, Plaintiff's trips to Mexico were not inconsistent with the assessment offered by Dr. Miller, and fail to support the ALJ's assessment of the medical evidence.

The ALJ has not carried his burden to set forth "a detailed and thorough summary of the facts and conflicting clinical evidence." *See Cotton*, 799 F.2d at 1408. The ALJ failed to identify "specific, legitimate reasons" to give less weight to the opinion of Dr. Miller regarding Plaintiff's physical abilities and limitations. *See Thomas*, 278 F.3d at 957.

**B.     Remand is appropriate in this matter.**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to properly reject the opinion of Plaintiff's treating physician. This opinion is intertwined with the testimony of the vocational expert regarding Plaintiff's ability to perform work in the national economy and the RFC determination based thereon by the ALJ. Moreover, it is not clear from the record that the ALJ would be required to find Plaintiff disabled based upon the opinion of Dr. Miller, who "indicated the claimant can only do a very narrow range of sedentary work." (Doc. 13-13 at 25). Consequently, the matter should be remanded for the ALJ to re-evaluate the medical evidence.

**CONCLUSION AND ORDER**

For all these reasons, the Court concludes the ALJ erred in his evaluation of the medical record. As a result, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on this matter, it will not address the remaining issue raised by Plaintiff on appeal.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's motion for summary judgment (Doc. 20) is **DENIED**;
2. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Cheryl Champion and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **October 29, 2012**        **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE